[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a limited contested action brought to the Judicial District of New Haven seeking a dissolution of the marriage, orders as to the custody of the minor children of the marriage and an equitable distribution of the parties' real and personal property. The summons and complaint were dated July 8, 1999, and the return date was August 3, 1999. The allegations of the complaint are that the parties were married in the State of Massachusetts on September 27, 1986. The complaint further alleges that the parties have lived in the State of Connecticut for a sufficient time to confer jurisdiction upon the court. The complaint alleges that there are two minor children issue of this marriage, Shana Aiperin born on March 10, 1990 and David Alperin born on June 26, 1988. The complaint alleges that the marriage was broken down irretrievably without any hope of reconciliation, and that the parties have not been recipients of assistance from the State of Connecticut or any public authority. CT Page 7259
The evidence presented at trial confirmed the allegations of the complaint. The plaintiff Jonathan Alperin stated that he had a Bachelor's Degree and an MBA. Mr. Alperin is currently employed as a purchasing manager for a manufacturing company m Norwalk. He is paid a base salary of $60,000.00 per annum and has basically been employed for his entire adult life in manufacturing and/or industrial concerns. He is currently earning his highest salary. Mrs. Alperin is a licensed beautician. She is a high school graduate. She had previously been married and had a child who has now reached the age of majority. At the time of the marriage, Mrs. Alperin owned her own home and her own business. The business was sold in approximately 1989 or 1990. At that time, the parties purchased equipment and set up a hairstyling salon in the marital residence. Mrs. Alperin worked at this throughout the marriage and earned income which was used to support the household in general. She is currently employed at Village Coiffeurs, and her income is dated on her financial affidavit. The parties also admitted an exhibit showing the tips that Mrs. Alperin earns.
At the time of the marriage, Mr. Alperin owned a multi-family home in Wallingford as well as a condominium. He still owns the condominium which is reflected on his financial affidavit. The multi-family home was sold, and the proceeds of that home went to purchase the property at Rock Hill in Woodbridge which has served throughout most of the marriage as the marital home. That purchase was accomplished in 1989 at a price of $325,000.00. The parties deposited $220,000.00 at the time of the purchase. That money came from savings and the proceeds of Mr. Alperin's multi-family home ($95,000.00), money from Mr. Alperin's mother ($70,000.00), and a loan from Mr. Alperin's sister, which was later repaid with the proceeds of Mrs. Alperin's home which was located on High Street in Woodbridge. The proceeds of the High Street property resulted in a net of $105,000.00. From that money, there were two vehicles purchased, a home equity loan repaid, the loan to the plaintiffs sister was repaid, and money was taken to maintain the mortgage on the High Street property pending the time that it took to sell. During the course of the marriage, the original mortgage of $120,000.00 was refinanced. Again, part of the proceeds of the refinance were used to purchase a vehicle.
Aside from the testimony offered as to the financial history of the parties, there was also testimony as to each parties opinion as to the breakup of the marriage. The husband testified that there were problems in the marriage in addition to the problems presented by the wife's alcohol abuse. At some point seven years ago, the parties had contemplated going to counseling, but they did not follow through at that time. By the time they went in 1999, the parties were beyond the point where counseling would alter their decision to terminate the marriage. CT Page 7260
There was testimony confirmed by two independent witnesses that Mrs. Alperin appeared on one occasion at the childrens' school for a function with a very strong, "overpowering" smell of alcohol. The same was confirmed by the child's clinical social worker and another teacher at the children's school. A neighbor observed Mrs. Alperin to be suffering from the influence of alcohol during an incident where one of the children had temporarily left the Alperin property. Several of these incidents resulted in DCF "referrals by persons who were mandated reporters. The testimony makes it clear that Mrs. Alperin was suffering from alcohol dependency during a significant portion of the marriage of the parties. Her appearing intoxicated at school functions, in front of a therapist, and I during an incident which could be construed as a crisis would take her beyond the pale of being an occasional user of alcohol or even an abuser of alcohol. The frequency of her alcohol use and her unawareness of her projection to others of being in an intoxicated state clearly is quite problematic. While it does appear from the testimony of her counselor, Ms. Sotola, that she has made some significant progress in this regard, the potential for I her alcohol abuse remains a factor of great concern in light of her history of alcohol abuse. Certainly, this was a significant factor which led to the breakup of the marriage of the parties.
In light of the foregoing, the court has considered the relevant statutory criteria, and enters the following orders:
The marriage of the parties is dissolved.
The court grants joint legal custody of the minor children with primary physical custody and decision making authority to the plaintiff father. The court has reviewed the stipulation of the parties dated May 24, 2000 and shall incorporate that stipulation fully into the terms of this judgment. That portion of Paragraph Number 4 of the stipulation which indicates that visitation is contingent upon the mother's continuing involvement in individual therapy is deleted. The remaining portion which states that the mother shall not consume any alcohol during the visitation periods shall remain in full force and in effect, as shall Paragraph 5b which contains a provision that the mother is not to consume alcohol I I six hours prior to or during visitation.
The defendant shall be responsible for the transportation of the children during visitation, subject to the provisos above with respect to her consumption of alcohol.
The plaintiff will continue to provide medical insurance for the benefit of the minor children as available through his employment, or as CT Page 7261 available at a reasonable cost through his employer. Unreimbursed and/or uninsured of medical expenses shall be paid in accordance with the child support guidelines.
The defendant shall pay child support to the plaintiff in the amount of $67.00 per week in accordance with the child support guidelines.
The defendant shall quit claim any right, title and interest she may have to the property at 2 Cannon Gate Way, Wallingford, Connecticut to the plaintiff. The plaintiff shall be responsible for any maintenance, mortgage, taxes or other liability with respect to that property, and shall hold the defendant harmless thereon.
The defendant shall quit claim her interest to the plaintiff in the property known as 28 Rock Hill Road, Woodbridge, Connecticut. That quit claim shall be effective upon the payment by the plaintiff to the defendant of $75,000.00. The plaintiff shall have 180 days from the date of this judgment in order to pay said sum. In the event that he does not pay said sum, he shall list the property at 28 Rock Hill Road for sale, the property shall be sold, and the defendant shall receive one half of the net proceeds of that sale, or the sum of $75,000.00, whichever is greater. Net proceeds of the sale shall be defined as the sale price less the normal and customary expenses of the sale including but not limited to real estate commission, conveyance taxes, attorney's fees, and adjustments.
The plaintiff shall continue to occupy and maintain the property at 28 Rock Hill Road during the time that he is exercising his option to pay the defendant, or until such I time as the property is sold.
The plaintiff shall retain ownership of the Volkswagen beetle automobile and the Nissan pickup truck. The defendant shall retain ownership of the 1996 Dodge caravan.
The plaintiff shall transfer the sum of $10,000.00 from his defined contribution profit sharing plan by means of a qualified domestic relations order.
The husband shall transfer the funds held under the Uniform Gifts To Minors Act by the Davis New York Venture Fund. Those funds shall be transferred so as to place them in the name of both parents, and shall be used for the benefit of the minor children "as deemed fit by both parents. In the event that both parents are unable to agree on the appropriate use of said funds, the court will retain jurisdiction for that purpose. CT Page 7262
Each party shall retain such funds and assets as are currently listed on their financial I affidavits unless specified in this judgment. Each party shall be responsible for payment of the respective debts listed on their financial affidavit unless specified herein.
The parties shall submit to mediation through the office of family relations in order to divide their personal property in an equitable manner. In the event that they are unable to reach agreement through the mediation process, the court shall retain jurisdiction for that purpose.
Neither party shall pay or receive alimony.
Each party shall be responsible for "s fees.